IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADM MILLING CO., : | | |
|     Plaintiff : | Civil Action No. 1:09-cv-544 | |
| : | | |
| v. : | (Chief Judge Kane) | |
| : | | |
| GOLD CRUST BAKING CO., INC., : | | |
|     Defendant : | | |

**MEMORANDUM**

On February 17, 2009, Plaintiff ADM Milling Company ("ADM") initially filed this action against Defendant Gold Crust Baking Company ("Gold Crust") in the Court of Common Pleas for Cumberland County, Pennsylvania, with service upon Defendant completed February 23. (Doc. No. 1.) Gold Crust then removed the action to this Court. (Id.) Gold Crust now moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, to dismiss or to transfer the case for improper venue under 28 U.S.C. § 1406 or 28 U.S.C. § 1404. For the reasons that follow, the Court finds that the case shall be dismissed for lack of personal jurisdiction.

**I.    BACKGROUND**

On or about February 28, 2008, Plaintiff ADM, a Minnesota corporation with its principal place of business in Illinois and an office in Camp Hill, Pennsylvania, and Defendant Gold Crust, incorporated and located in Virginia, entered into a contract for shipment of flour. (Reedus Aff. ¶ 2.) A Gold Crust representative initiated contract negotiations by contacting ADM's Illinois facility, and ADM responded to the solicitation by having Sales Manager Ray Viggiano, working out of offices in Camp Hill, Pennsylvania and Rumson, New Jersey, call and visit Gold Crust's Virginia office. (Reedus Aff. ¶¶ 3-5; Christou Aff. ¶ 3.) Under the contract,

1

38,000 cwts (centum weight)[1] of Dominator-blend flour was to be delivered during the months March through September F.O.B.[2] from ADM's Pennsylvania facility to Gold Crust's facility in Alexandria, Virginia. (Doc. Nos. 1-2 ¶ 3; 3-2 at 8-10.) Although the contract was prepared in ADM's Pennsylvania office and "all contracts, order confirmation, billings and all other accounting functions were generated from ADM's Camp Hill location," the contract utilized ADM's Illinois address, Gold Crust executed the contract in Virginia, and Gold Crust was instructed to remit payment on the contract to Atlanta, Georgia. (Doc. Nos. 6-3 ¶¶ 6, 8; 3-2 at 16.)

On March 19, 2008, ADM and Gold Crust modified the contract to allow for delivery of a lower-priced blend of flour, Top King, to be delivered to Gold Crust. (Doc. No. 1-2 ¶ 4.) Gold Crust cancelled the contract prior to completion of payments, and according to ADM, owes an outstanding balance of $631,257.97. (Doc. Nos. 1-2 ¶ 7; 3-2 at 13.) ADM brings suit, via Gold Crust's removal, in the Middle District of Pennsylvania to recover the balance outstanding on the contract. (Doc. No. 1.) In the motion currently before the Court, Gold Crust seeks dismissal of the suit for lack of personal jurisdiction and alternatively seeks dismissal or transfer on the basis of improper venue.

---

[1] Centum or hundred weight is a unit of measurement equal to one-hundred pounds and is often used in futures contracts in the United States.

[2] The exhibits indicate that the flour was to be delivered "F.O.B. Alexandria." (Doc. No. 3-2 at 8.) The term "F.O.B.," followed by a destination, is "a mercantile term denoting that the seller is required to pay the freight charges as far as the buyer's named destination." Black's Law Dictionary 690-91. (8th ed. 2004). Here, Alexandria, the location of Defendant's bakery, is the named destination of the goods.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a court shall dismiss a complaint for lack of *in personam* jurisdiction. Fed. R. Civ. P. 12(b)(2). Rule 4(e) of the Federal Rules of Civil Procedure authorizes a court to assert personal jurisdiction over non-state residents to the extent Pennsylvania law allows. Fed R. Civ. P. 4(e). Pennsylvania law, in turn, authorizes personal jurisdiction to the fullest extent the Constitution allows. 42 Pa. Con. Stat. Ann. § 5322(b). Personal jurisdiction may be established via general jurisdiction by showing substantial and continuous contact with the forum state or via specific jurisdiction by showing the existence of sufficient minimum contacts with the forum state from which the pending cause of action arises. The plaintiff has the burden of establishing the existence of personal jurisdiction, but need only make a prima facie case of jurisdiction at this point in the proceedings, which it can sustain through "sworn affidavits or other competent evidence." North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); In re Chocolate Confectionary Antitrust Litigation, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). Absent a hearing, all of the plaintiff's allegations are taken as true for purposes of the personal jurisdiction analysis, and all factual disputes are drawn in its favor. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312 (3d Cir. 2007).

## III. DISCUSSION

Gold Crust argues that this Court should dismiss the case because it does not have personal jurisdiction over it. ADM concedes that there is no general jurisdiction, but argues that Gold Crust purposefully availed itself of Pennsylvania's laws and resources, so as to establish specific jurisdiction. (Doc. No. 6 at 5.) In the alternative, Gold Crust argues that venue is improper in Pennsylvania, and the case should be transferred to the Eastern District of Virginia.

ADM contests this as well, arguing that a sufficient part of the transaction occurred in the Middle District of Pennsylvania to establish not only personal jurisdiction, but also venue. The Court begins, as it must, with the jurisdictional issue. Because the Court finds that personal jurisdiction over Gold Crust does not exist, the Court need not consider whether venue is proper.

To establish specific jurisdiction, a court must first determine whether the defendant has purposefully directed "minimum contacts with the state 'such that the defendant should reasonably anticipate being haled into court there.'" North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Second, the plaintiff's cause of action must arise from these minimum contacts with the forum state. Marten v. Godwin, 499 F.3d 290 (3d Cir. 2007). Once the first two inquiries have been resolved in the affirmative, the court should ensure that exercising jurisdiction over the defendant "comport[s] with traditional notions of fair play and substantial justice." Vetrotex CertainTeed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 148, 150-51 (3d Cir. 1996).

In evaluating the minimum contacts necessary to establish jurisdiction in the case of a contract between a forum and non-forum resident, the contract itself is not dispositive. Moreover, whether the defendant is physically present in the forum state is not required, so long as the defendant "purposefully avails itself of the privilege of conducting activities within the forum state," thus invoking the benefits and protections of its laws. North Penn Gas Co., 897 F.2d at 690-91 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Third Circuit Court of Appeals precedent dictates use of the following factors to determine whether Gold Crust has sufficient minimum contacts with the forum state to establish

specific jurisdiction: 1) the location of the contract negotiations, 2) whether the non-resident solicited business from the forum state, 3) whether the non-resident invoked and received benefits under the laws of the forum state, 4) the contemplated future consequences of the contract, 5) the terms and provisions of the contract, 6) the parties' course of dealing, and 7) the type of goods sold. Remick v. Manfredy, 238 F.3d 248, 253-56 (3d Cir. 2001); Vetrotex, 75 F.3d at 151; Empire Abrasive Equip. Corp. v. H.H. Watson, Inc., 567 F.2d 554, 559 (3d Cir. 1977); Strick Corp. v. A.J.F. Warehouse Distributors, Inc., 532 F. Supp. 951, 958 (E.D. Pa. 1982).

### A. Contract Negotiations and Solicitation of Business

It is clear from the complaint that the origins of this dispute are elsewhere than the Commonwealth of Pennsylvania. Although ADM has an office in Pennsylvania, Gold Crust initially reached out to ADM's Illinois headquarters. (Reedus Aff. ¶ 4.) In pre-contract negotiations, ADM's employees visited Gold Crust's Virginia office; Gold Crust did not visit ADM's Pennsylvania office.[3] (Reedus Aff. ¶ 3.) Gold Crust specifically denies that any of its employees or agents visited ADM's Pennsylvania office to facilitate the contract or to conduct business there. (Christou Aff. ¶¶ 7-8, 11.) Further, the contract was executed in Virginia. (Christou Aff. ¶ 3.) The only pre-contract contact that occurred in Pennsylvania, then, was the preparation of the contract by Abbey Reedus in Pennsylvania, the executed page of which lists ADM's Illinois address. (Reedus Aff. ¶ 6.) Accordingly, the first two factors weigh against the exercise of personal jurisdiction.

---

[3]As Gold Crust points out, ADM's Sales Manager, Ray Viggiano, with whom Gold Crust was in contact, has an office both in Pennsylvania and in New Jersey, but ADM does not aver that Gold Crust contacted Viggiano at his Pennsylvania office rather than at his New Jersey office.

### B. Whether Defendant Received Benefits of Forum State Laws

Next, the Court examines whether Gold Crust invoked and received benefits under Pennsylvania law. In Remick, relied upon by Plaintiff, the non-resident defendant received benefits under Pennsylvania law by entering into a contract with a Pennsylvania attorney and specifically referencing the Pennsylvania Rules of Professional Conduct. Remick, 238 F.3d at 256. Distinguishably, Plaintiff in this case has pointed to no fact indicating that Gold Crust received any benefit of Pennsylvania law. Further, as discussed below, the choice of law provision indicates that Gold Crust would not have expected to benefit from forum law, but rather Illinois law. The benefits-derived factor weighs against a finding of personal jurisdiction over Gold Crust.

### C. Future Consequences and Key Terms of the Contract

The consideration of the future consequences and key terms of the contract, however, is a closer question. On its face, the contract term directing delivery to Alexandria, Virginia appears as the one that bears on location. (Doc. No. 3-2 at 8.) However, both affidavits indicate that "[u]nder the Contract, ADM was to deliver flour from its facility in Shiremanstown, Pennsylvania to [Gold Crust's] facility in Alexandria, Virginia," thus asserting the parties' mutual understanding that at the least Pennsylvania storage, transportation, and packing facilities would be required for completion of the contract. (Christou Aff. ¶ 5.) Although Pennsylvania was acknowledged as the actual source of the goods sold, the contract provides that ADM controlled the shipment until it was received by Gold Crust in Virginia, which substantially decreases the amount this factor weighs in favor of ADM. See, Freedom Forge Corp. v. Jersey Forging Works, Inc., 549 F. Supp. 99, 101 (M.D. Pa. 1982) (finding six purchase orders sent into

6

the forum state where the product was to be manufactured an insufficiently "thin thread" connecting the defendant to the forum state); Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 494, 500 (M.D. Pa. 1992) (putting little weight into effect of the manufacture of the product in forum state when production was under control of the forum-based party).

The choice of law provision of the contract also militates against a finding that Gold Crust would have reasonably anticipated litigation in Pennsylvania. Though in fine print, the choice of law provision printed on both the original sales confirmation and the revised sales confirmation indicates that Illinois law is intended to control the contracts.[4] (Doc. No. 6-3 at 6, 8.) Thus, the choice of law provision weighs against a finding of personal jurisdiction, as it indicates Gold Crust would have no reason to expect being "haled into court" in Pennsylvania. In review, when considering the terms of the contract, shipment of the product from the forum state weighs in favor of finding personal jurisdiction, but all other terms weigh against such a finding. On balance, the Court finds this factor neutral.

### D. Parties' Course of Dealing

The parties' course of dealing indicates a lack of personal jurisdiction over Gold Crust. Gold Crust remitted payment to ADM's Georgia office, rather than to ADM's Pennsylvania office. (Doc. No. 3-2 at 16.) Also, as stated above, ADM visited Gold Crust's Virginia offices;

---

[4]The Court notes that there is an additional choice of law provision on another unnamed document, marked as page 16, which indicates that the "the contract shall be governed by and construed under the laws of the State where product is manufactured." (Doc. No. 5-3 at 2.) However, neither party argues this page is a part of the contract, thus it does not appear to have any bearing on the contract in question. To the extent it is a part of the invoice (Doc. No. 5-3 at 3) included in the same exhibit, the choice of law provision still is not relevant to the jurisdictional analysis. Vetrotex, 75 F.3d at 152 n.6 (finding that the choice of law provisions on the invoices pertained only to the shipment of each purchase, and thus were "not . . . relevant to our jurisdictional analysis of the underlying Supply Agreements.").

Gold Crust never visited any of ADM's facilities. ADM does state that its Sales Manager, Ray Viggiano, who maintains an office in both Pennsylvania and New Jersey, was Gold Crust's primary contact in the contract formation. (Reedus Aff. ¶ 5.) However, ADM does not specifically state that any of, let alone the majority of, the contact between Viggiano and Gold Crust occurred in Pennsylvania. ADM has not, then, made even a prima facie case that Gold Crust contacted it, by telephone or otherwise, at its Pennsylvania location. General Elec. Co. v. Deutz AG, 270 F.3d 144, 150-51 (3d Cir. 2001) ("In modern commercial business arrangements, however, communication by electronic facilities, rather than physical presence, is the rule."). Furthermore, unlike in Remick (out-of-state defendant's creation of a relationship with a Pennsylvania attorney considered a significant fact in finding specific jurisdiction in Pennsylvania), which Plaintiff relies upon, the facts here do not indicate that the Virginia Defendant reached out to create a continuing relationship with a Pennsylvania citizen. Remick, 238 F.3d at 256-57. ADM is a Minnesota corporation with its principal place of business in Illinois, which is where Gold Crust initially contacted it; ADM is not a Pennsylvania citizen. (Reedus Aff. ¶ 4.) Thus, the parties' course of dealing indicates a lack of personal jurisdiction since most, if not all, party interactions occurred outside of Pennsylvania.

### E. Goods at Issue

Lastly, the Court considers the product at issue. For this factor, courts have looked to whether the purchase was more akin to a one-time consumer purchase from a customer catalogue, which weighs against a finding of personal jurisdiction, or whether the purchase was more akin to a specialized and highly-technical purchase of technology equipment, which weighs in favor of personal jurisdiction. See Empire Abrasive Equip Corp., 567 F.2d at 559

("[T]he order was not for typical mail-order merchandise, but for high-priced industrial equipment for the supply of which, according to the complaint, the seller had to enter into contracts with other vendors. . . . If more than an isolated mail-order transaction is involved, litigation in Pennsylvania may not be unfair to [the defendant]."); Strick, 532 F. Supp. at 959 ("[T]he type of goods are relevant since there is less justification for asserting jurisdiction over a non-resident purchaser of mail-order consumer goods than over a non-resident commercial purchaser of sophisticated, high-priced industrial equipment.").

Here, Gold Crust is a commercial purchaser of a multi-shipment contract for flour. ADM makes no case that the flour was customized or made specifically for Gold Crust. Because flour is an agricultural product that does not depend on specialized production facilities that can likely only be found in Pennsylvania, the Court finds that the purchase is more similar to a purchase from a catalogue than a specialized technology purchase. See Strick, 532 F. Supp. at 959-60 (finding that a large purchase of "expensive and complex" truck trailers for which the defendant "specified certain features" weighed in favor of a finding of personal jurisdiction); Allied Leather Corp. v. Altama Delta Corp., 785 F. Supp. 494, 502 (M.D. Pa. 1992) (finding that a purchase for leather to make military boots was an unspecialized commodity despite chemical treatment required for the product to meet specification, and thus the "type of goods" factor weighed against a finding of personal jurisdiction.). The six-month contract is also not of sufficient duration to weigh in favor of personal jurisdiction. But see General Electric, 270 F.3d at 151 (stating, in context of five-year contract, that "[i]n the commercial milieu, the intention to establish a common venture extending over a substantial period of time is a more important consideration" than which party initiated the relationship).

9

Accordingly, this factor marginally weighs in favor of Gold Crust because the type of goods, while somewhere between a one-time consumer purchase and a specialized or long-term commercial commitment to purchase technology equipment, is more akin to a consumer purchase.

## IV. CONCLUSION

Considering all the facts in the light most favorable to ADM and the factors listed above, the Court finds that ADM has not established a prima facie case that Gold Crust established sufficient minimum contacts with the state of Pennsylvania. The only fact favoring Pennsylvania exercising personal jurisdiction over Defendant is the fact that the product was to be shipped from Pennsylvania. All other factors, including the initial outreach of business, the location of the contract negotiations, the benefit of forum state law, the parties' course of dealing, and the type of product at issue, weigh against exercising personal jurisdiction over Gold Crust in Pennsylvania.

Since the Court cannot exercise personal jurisdiction over Defendant Gold Crust, the case will be dismissed. The Court need not consider the venue arguments. An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADM MILLING CO., | : | |
|     Plaintiff | : | Civil Action No. 1:09-cv-544 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| GOLD CRUST BAKING CO., INC., | : | |
|     Defendant | : | |

## **ORDER**

**AND NOW**, this 30th day of June 2009, upon consideration of Defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 3), for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that the motion is **GRANTED**. The Clerk of Court is directed to close the case.

 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania